FILED & ENTERED

FEB 07 2019

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Pgarcia    DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>Neli Maria Negrea,<br><br>Debtor. | Case No.: 1:18-bk-11288-VK<br><br>CHAPTER 13<br><br>**MEMORANDUM OF DECISION RE DEBTOR'S OBJECTION TO CLAIM FILED BY ELLEN ORSA**<br><br>Hearing Date:  January 22, 2019<br>Location:    Courtroom 301<br>         21041 Burbank Blvd.<br>         Woodland Hills, CA 91367 |

**I. BACKGROUND**

On October 14, 2016, Neli Maria Negrea ("Debtor") filed a prior chapter 13 petition, commencing case no. 1:16-bk-13051-VK. In her Statement of Financial Affairs ("SOFA"), Debtor indicated that she had been an officer, director or managing executive of N&D Transportation, Inc. ("N&D") within four years of the petition date, but that she had not been an owner of at least 5% of the voting or equity securities of any corporation.

On March 7, 2017, Ellen Orsa filed proof of claim no. 15-1 in the amount of $12,774.72, based on an attached decision by the Labor Commissioner of the State of California (the "Labor

Decision"). In the Labor Decision, the Labor Commissioner held N&D liable for nonpayment of Ms. Orsa's wages, interest and penalties for violations from October 26, 2015 through November 20, 2015. In the Labor Decision, the Labor Commissioner noted:

> [Ms. Orsa's] Complaint originally listed [Debtor], an Individual as an additional Defendant. [Debtor] filed for Chapter 13 Bankruptcy on October 24, 2016…. Due to an automatic stay, the Labor Commissioner's Office is unable to proceed against [Debtor] at this time. Should [Debtor's] bankruptcy case be dismissed or closed without resulting in a discharge and the automatic stay lifted, it may be possible for the Labor Commissioner to address [Debtor's] individual liability, if any, at that time.

Labor Decision, p. 1.[1]

On March 14, 2017, Debtor objected to Ms. Orsa's claim (the "First Case Objection"). In the First Case Objection, Debtor asserted that she was not individually liable for Ms. Orsa's claim because "N&D and not… Debtor" was Ms. Orsa's employer. First Case Objection, p. 3. Ms. Orsa opposed the First Case Objection (the "First Case Opposition"). In the First Case Opposition, Ms. Orsa argued that Debtor was liable under a joint employer theory, citing *Martinez v. Combs*, 49 Cal.4th 35 (2010). The First Case Opposition stated that Ms. Orsa performed separate duties for Debtor personally; however, Ms. Orsa did not include a declaration in support of the First Case Opposition and did not provide other evidence that Debtor and Ms. Orsa had a separate employment agreement. Ms. Orsa did not present any alternative theories of recovery against Debtor.

On February 3, 2017, Debtor filed a second amended chapter 13 plan (the "Plan"). On March 23, 2017, the Court entered an order confirming the Plan.

On May 9, 2017, the Court held a hearing on the First Case Objection. At that time, the Court issued a ruling sustaining the First Case Objection (the "Ruling"). In the Ruling, the Court held that Ms. Orsa had not shown that Debtor was a joint employer liable for damages owed to Ms. Orsa by N&D, and that Ms. Orsa had not provided evidence of a separate employment agreement between Debtor and Ms. Orsa. The Court provided the following analysis regarding *Martinez* and joint employer liability:

---

[1] Ms. Orsa did not move for relief from the automatic stay to proceed before the Labor Commissioner as against Debtor.

In *Martinez*, a group of strawberry field workers (the "Field Workers") sued a farmer (the "Farmer") and several produce merchants (the "Produce Merchants") through which the Farmer sold his produce. *Martinez*, 49 Cal.4th at 42-43. The Farmer controlled the fields and made all decisions regarding harvest, packaging and sale. *Id.*, at 43. The Produce Merchants were not related to one another and the Farmer had different contractual relationships with each of them. *Id.*, at 44. Two of the Produce Merchants would advance money to the Farmer prior to the season in exchange for exclusive rights to produce. *Id.* The other Produce Merchants would either pay on delivery of the produce or remit net profits to the Farmer after paying costs. *Id.* Much of the Farmer's financial resources came from the Produce Merchants. *Id.*, at 44-45.

Nevertheless, the Farmer alone made decisions regarding hiring and firing employees, training employees, setting their work and break hours, providing equipment, setting the employees' wages, purchasing workers' compensation insurance and handling payroll and taxes. *Id.*, at 45. The Farmer and his foremen were also the ones to supervise the employees. *Id.*, at 45.

The Field Workers claimed that the Produce Merchants also supervised employees to ensure quality control. *Id.* As part of this quality control, the Produce Merchants would send field representatives to oversee the Field Workers and instruct the Field Workers on certain matters, such as how to pack the produce. *Id.* The contract between the Farmer and the Produce Merchants provided for this kind of supervision. *Id.*

Eventually, the Farmer was unable to pay wages to the Field Workers. *Id.*, at 46. As a result, a representative of the Field Workers filed a claim for unpaid wages with the Department of Labor Standards Enforcement (the "DLSE"). *Id.*, at 46-47. At this time, a field representative for one of the Produce Merchants told the Field Workers directly that it would be tendering a check to the Farmer that would cover the Field Workers' wages. *Id.*, at 47. In addition, a DLSE investigator met with one of the other Produce Merchants and instructed it to make checks payable to the Field Workers, not to the Farmer. *Id.* The merchant complied. *Id.*, at 47-48.

Subsequently, the Field Workers filed a lawsuit against the Farmer and the Produce Merchants, claiming that both the Farmer and the Produce Merchants were liable for unpaid minimum wages under California Labor Code ("CLC") § 1194, liquidated damages under CLC § 1194.2 and additional penalties pursuant to the CLC. *Id.*, at 48. To attach liability to the Produce Merchants, the Field Workers claimed, among other things, that the Produce Merchants and the Farmer jointly employed the Field Workers. *Id.* The question that reached the Supreme Court of California was whether the Produce Merchants could be held liable for unpaid wages under CLC § 1194. *Id.*, at 49-50.

The court held that the wage orders from the Industrial Welfare Commission (the "IWC") governed the definition of an employment relationship for purposes of CLC § 1194. *Id.*, at 52. Referring to the IWC's wage orders, the court held that "to employ" an employee meant one of three things: "(a) to exercise control over

the wages, hours or working conditions, *or* (b) to suffer or permit to work, *or* (c) to engage, thereby creating a common law employment relationship." *Id*., at 64 (emphasis in *Martinez*). As part of its analysis, the *Martinez* court distinguished its holding from a prior holding of the Supreme Court of California, in *Reynolds v. Bement*, 36 Cal.4th 1075 (2005). In *Reynolds*, the plaintiff-employee worked for a corporation and sued under CLC § 1194 to recover unpaid wages. *Reynolds*, 36 Cal.4th at 1082-83. The plaintiff named as defendants the corporation and eight of its officers and directors in their individual capacities. *Id*. The question before the court was whether the plaintiff had stated a cause of action against the individual defendants. *Id*., at 1083. The *Reynolds* court held that the California Legislature, through CLC § 1194, did not intend to "expose to personal civil liability any corporate agent who 'exercises control' over an employee's wages, hours, or working conditions…." *Id*., at 1088.

The *Martinez* court did not disagree with this specific holding of *Reynolds*, stating that "[t]he opinion in *Reynolds*…properly holds that the IWC's definition of 'employer' does not impose liability on individual corporate agents acting within the scope of their agency." *Martinez*, 49 Cal.4th at 66. However, the issue in *Martinez* was not whether individual agents of a corporate employer could be held jointly liable for unpaid wages; rather, the issue was whether separate, third party entities (the Produce Merchants) that were involved with supervision over the Field Workers could be held liable for unpaid wages of employees of the Farmer. Even then, the answer was no. *Id*., at 69-77; *see also Futrell v. Payday California, Inc*., 190 Cal.App.4th 1419, 1432 (Ct. App. 2010) ("The extension of personal liability to the agents of an employer is not reasonably derived from the language and purposes of the Labor Code wage statutes.").

Here, Debtor listed in her Statement of Financial Affairs that she was an "officer, director, or managing executive" of N&D. As an agent of N&D, Debtor is not deemed a "joint employer" under *Martinez* and *Reynolds* for purposes of CLC § 1194, and Ms. Orsa cannot hold Debtor liable under this theory.

On May 18, 2017, the Court entered an order disallowing Ms. Orsa's claim (the "Disallowance Order"). Ms. Orsa did not timely appeal the Disallowance Order and did not timely move for relief from the Disallowance Order.

On May 9, 2017, the chapter 13 trustee filed a motion to dismiss Debtor's prior bankruptcy case for failure to make plan payments. On January 10, 2018, the Court entered an order dismissing Debtor's prior chapter 13 case (the "Dismissal Order"). Debtor did not obtain a discharge in the prior case.

On May 18, 2018, Debtor filed her current chapter 13 case. Once again, in her SOFA, Debtor indicated that she had been an officer, director or managing executive of N&D within

four years of the petition date, but that she had not been an owner of at least 5% of the voting or equity securities of any corporation. On July 27, 2018, Ms. Orsa filed proof of claim no. 8-1. Ms. Orsa again claims damages in the amount of $12,744.72, the amount awarded to Ms. Orsa against N&D by the Labor Commissioner.

On July 31, 2018, Debtor filed an objection to Ms. Orsa's claim (the "Second Case Objection"), asserting that res judicata bars Ms. Orsa's claim against the estate. On August 28, 2018, Ms. Orsa filed an opposition to the Second Case Objection (the "Second Case Opposition"). In the Second Case Opposition, Ms. Orsa argues that res judicata does not apply, and again asserts that *Martinez* and joint employer liability form the basis of Ms. Orsa's claim against the estate, as well as separate personal services work that Ms. Orsa did for Debtor. This time, Ms. Orsa also asserts that Debtor is liable under the federal Fair Labor Standards Act, an argument Ms. Orsa did not make in the First Case Opposition.

## II. JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). Venue in this Court is proper pursuant to 28 U.S.C. § 1409(a). This matter is a core matter under 28 U.S.C. § 157(b)(2)(A) and (B), and therefore, this Court has the constitutional authority to enter a final ruling on the matter. *Stern v. Marshall*, 564 U.S. 462, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011).

## III. ANALYSIS

"Res judicata, or claim preclusion, provides that a final judgment on the merits of an action precludes the parties from relitigating all issues connected with the action that were *or could have been raised in that action*." *Rein v. Providian Fin. Corp.*, 270 F.3d 895, 898-99 (9th Cir. 2001) (emphasis added).

> Claim preclusion is appropriate where: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) there was a final judgment on the merits; and (4) the same claim or cause of action was involved in both suits.

*Id.*, at 899.

Here, the parties do not dispute that the parties to the Second Case Objection are identical to the parties litigating the First Case Objection, that the Court had jurisdiction to enter the Disallowance Order, that the Disallowance Order was an order on the merits and that the same claim was at issue in the First Case Objection as with the Second Case Objection. Instead, Ms. Orsa asserts that res judicata does not apply because Debtor did not receive a discharge in her prior chapter 13 case and, relying primarily on *In re Mirzai*, 271 B.R. 647 (C.D. Cal. 2001),[2] contends that the Disallowance Order was not final.

In *Mirzai*, creditors Kolbe Foods, Inc. ("Kolbe"), James C. Kolbe, Jr. and Melissa Kolbe filed a fraud action against the debtor. *Mirzai*, 271 B.R. at 650. The debtor then filed a chapter 11 petition, and the creditors obtained relief from the automatic stay to litigate the pending action. *Id*. The creditors obtained a judgment against the debtor, and an appellate court affirmed the judgment. *Id*.

Kolbe filed a proof of claim against the debtor's estate. *Id*. The debtor objected to the claim on the basis that Kolbe was a suspended corporation and did not have standing to assert a claim. *Id*. The bankruptcy court sustained the debtor's objection and disallowed Kolbe's claim. *Id*. The debtor then voluntarily dismissed his bankruptcy case without discharge and without approval of a plan of reorganization. *Id*.

After dismissal of his case, the debtor brought a motion in state court attempting to void the judgment against him, arguing, among other things, that the disallowance of Kolbe's proof of claim in the debtor's dismissed bankruptcy case voided the state court judgment. *Id*. The state court denied the motion, and the debtor's appeals to the state appellate courts were unsuccessful. *Id*., at 650-51. The debtor then filed another chapter 11 case, followed by an adversary proceeding through which the debtor asked the bankruptcy court to provide declaratory and injunctive relief by finding that the court's prior disallowance order barred Kolbe from having a claim against the debtor's estate and barring Kolbe from seeking to enforce its state court judgment. *Id*., at 651. The bankruptcy court disagreed, finding that the prior disallowance order

---

[2] *Mirzai* was affirmed on different grounds by the Ninth Circuit Court of Appeals. *See In re Mirzai*, 36 Fed.App'x 619 (9th Cir. 2002). In affirming the district court, the Court of Appeals held that the district court did not abuse its discretion in denying the debtor's request for a preliminary injunction. The Court of Appeals did not decide whether a discharge is required before applying the doctrine of res judicata to a claims allowance or disallowance order.

"did not have a res judicata effect so as to establish the invalidity of Kolbe's judgment" and that, because the debtor was unlikely to succeed on the merits of his claims, there was no cause for a preliminary injunction. *Id*. The debtor appealed to the district court. *Id*.

On appeal, the district court first considered 11 U.S.C. § 349(b), which provides—

> Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title—
> (1) reinstates—
>  (A) any proceeding or custodianship superseded under section 543 of this title;
>  (B) any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or preserved under section 510(c)(2), 522(i)(2), or 551 of this title; and
>  (C) any lien voided under section 506(d) of this title;
> (2) vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title; and
> (3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

The *Mirzai* court conceded that § 349(b) does not specifically include claims allowance or disallowance orders as orders that are vacated upon dismissal, but nevertheless held that such orders are vacated if there is a dismissal without discharge:

> Section 349 governs the effect of dismissal of a bankruptcy case. Subsection (b) of section 349 provides that certain orders and judgments are vacated by a dismissal, unless preserved by the bankruptcy court for cause. A disallowance of a proof of claim under section 502(b), however, is not specifically enumerated. Here, there was no such preservation of the order disallowing Kolbe's proof of claim.
>
> The clear intent of Congress was for section 349 "to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case." H.R.Rep. No. 95–595, at 338 (1977); S.Rep. No. 95–989, at 48 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5834, 5963, 6294. Section 349 facilitates a return to the status quo before the filing of the bankruptcy petition. The bankruptcy court, however, can exercise its equitable powers and protect rights obtained in reliance on the bankruptcy case, thereby limiting the scope of dismissal.

> The dismissal of a bankruptcy case does not entitle the debtor to the "fresh start" that underlies the policy of the Bankruptcy Code. *Case,* 27 B.R. at 846. Only discharge frees the debtor, "leaving liability for as few obligations as possible." *Id.* Once discharge occurs and the case is closed, there is finality. *See* 11 U.S.C. § 350. No party may petition the court for reconsideration of orders allowing a claim. 11 U.S.C. § 502(j). However, the converse is also true; if no discharge is granted, there is no finality as to most orders entered during the pendency of the case, unless preserved by the court in the exercise of its equitable powers. *See* 11 U.S.C. § 349.

*Id.*, at 652.

The district court noted that "there appears to be no controlling authority on point in the Ninth Circuit," and relied primarily on an out-of-circuit case from 1983: *In re Case*, 27 B.R. 844 (Bankr. D. S.D. 1983). In *Case*, prior to dismissal of their bankruptcy case, the debtors moved to preserve orders, including a claims disallowance order. *Case*, 27 B.R. at 845. In that context, the court decided not to preserve the orders because the debtors' case was being dismissed without discharge. *Id.*, at 846-48. However, the *Case* court did not discuss res judicata, and did not rely on any Ninth Circuit authority in reaching its decision. As such, the Court does not find *Case* helpful to the issues presented in this case. *Contra In re Kessler*, 2014 WL 2761212 (Bankr. C.D. Cal. Jun. 18, 2014) (holding that a claims disallowance order entered in a prior chapter 11 case that was dismissed without plan confirmation or discharge was final and entitled to res judicata effect in the debtors' second chapter 11 case).

As an alternative basis for refusing to apply res judicata, the *Mirzai* court also reasoned that a disallowance of a claim based on procedural grounds was not subject to res judicata, because application of res judicata requires a final judgment *on the merits*:

> Moreover, it is apparent from the record that the proof of claim was denied because of the suspended status of Kolbe Foods, Inc., as this was Mirzai's only grounds for objection to the proof of claim. A procedural disallowance is not a judgment on the merits of the claim and should not be entitled to a preclusive effect. *See Coast Wineries,* 131 F.2d at 648–649.

*Mirzai*, 271 B.R. at 654; *see also Mirzai*, 271 B.R. at 654 n.6 ("Here, the bankruptcy court did not decide the merits of Kolbe's claim because that had been done by the state court. The bankruptcy court appears to have disallowed Kolbe's proof of claim on procedural grounds

Case 1:18-bk-11288-VK    Doc 64    Filed 02/07/19    Entered 02/07/19 16:34:20    Desc
Main Document    Page 9 of 13

only."). As such, *Mirzai* is readily distinguishable from this case because this Court's prior Disallowance Order was on the merits.

Other courts have disagreed with the broad holding of *Mirzai* that lack of a discharge nullifies finality of an order. As noted above, in *Kessler*, 2014 WL 2761212, although the debtors had not received a discharge or confirmed a plan in their prior chapter 11 case, the bankruptcy court held that res judicata precluded relitigation of an order disallowing a claim. *Kessler*, 2014 WL 2761212, at *5-9. *See also In re Dumontier*, 389 B.R. 890 (Bankr. D. Mont. 2008) (holding that neither 11 U.S.C. § 349 nor the fact that the debtor did not receive a discharge in her prior case prevented the court from applying res judicata to a claims order entered in the debtor's prior case).

The Ninth Circuit Court of Appeals has addressed similar issues. In *In re Siegel*, 143 F.3d 525 (9th Cir. 1998), the debtor defaulted on two notes secured by real property. *Siegel*, 143 F.3d at 527-28. The debtor then filed for bankruptcy protection. *Id*., at 528. Federal Home Loan Mortgage Corp. ("Freddie Mac") filed two claims against the estate to collect on a deficiency judgment. *Id*. The debtor did not object. *Id*. Subsequently, the debtor received a discharge, and the debtor's bankruptcy case was closed. *Id*.

Freddie Mac moved for summary judgment against the debtor, arguing in a separate action that it was entitled to judgment on all its claims based on the res judicata effect of the allowance of Freddie Mac's claims in the debtor's bankruptcy case. *Id*. The district court agreed, and the debtor appealed. *Id*.

On appeal, the debtor argued that the proofs of claim filed by Freddie Mac were not final judgments giving rise to res judicata. *Id*., at 529. The Ninth Circuit Court of Appeals disagreed:

> "A claim ..., proof of which is filed under section 501 of this title [Title 11], is *deemed allowed,* unless a party in interest ... objects." 11 U.S.C. § 502(a) (emphasis added). If there is an objection, the court must hold a hearing and then it "shall *allow* " the claim to the extent proper. 11 U.S.C. § 502(b) (emphasis added). Of course, if the court formally actually allows the claim, there can be little doubt about the ultimate res judicata effect of that allowance. But it is equally clear that when a claim is "deemed allowed" it has the same effect. Consider: what else can "deemed allowed" mean? It must mean deemed allowed by the court. In other words, it is deemed that the court has acted on the claim and ordered allowance. Congress has relieved the court of the task of actually endorsing its allowance of the claim on that document or on a separate form of

-9-

> order. It has saved the court from that burdensome and almost ministerial task when no interested party demands it. It would be most peculiar if the effect was that uncontested and allowed claims had less dignity for res judicata purposes than a claim which at least one party in interest thought was invalid or contestable in whole or in part. We see no reason to embrace that rather peculiar result. Rather, we see § 502(a) as a recognition of the fact that people can raise objections and litigate them, if they see something wrong with a claim, but if they do not, the claim will be treated in all respects as a claim allowed by the court itself. In short, the validity of the claim has been determined on the merits, and attacks upon it that "could have been asserted" cannot be raised in later proceedings. *In re Intl. Nutronics,* 28 F.3d at 969.

*Id.*, at 530. The Court of Appeals did not hold that a debtor must receive a discharge for res judicata to apply to claims orders entered during a bankruptcy case. Rather, the *Siegel* court held that res judicata applied to bar the debtor from relitigating an issue that had been decided in the debtor's closed bankruptcy case *even where*: (1) the bankruptcy court had not adjudicated Freddie Mac's entitlement to a claim; and (2) the claim was only deemed allowed (because the debtor did not object). If a "deemed" allowed claim is entitled to preclusive effect, then disallowance of a claim, which was *actually adjudicated, on the merits*, should be entitled to preclusive effect, whether or not the debtor has received a discharge.

Other cases have indicated that res judicata applies to an order on allowance or disallowance of a claim, even if the debtor's case was dismissed and/or the debtor did not receive a discharge. In *In re Bevan*, 327 F.3d 994 (9th Cir. 2003), the debtors filed a chapter 13 petition. After paying off the Internal Revenue Service's lien against the debtors' real property, a secured lender filed a proof of claim, asserting that the lender was equitably subrogated to the rights of the Internal Revenue Service. *Bevan*, 327 F.3d at 996.

The debtors objected to the lender's claim. *Id*. The bankruptcy court agreed with the lender, as did the district court on appeal. *Id*. By the time the case reached the Ninth Circuit Court of Appeals, the debtors had voluntarily dismissed their case. *Id*. As such, the debtors argued that the appeal was moot, including the issue regarding whether the bankruptcy court properly allowed the lender's claim. *Id*. The Court of Appeals disagreed:

> It is true that if an issue is closely connected to the reorganization process itself, it will be mooted when the proceeding is dismissed. *See Spacek v. Thomen (In re Universal Farming Indus.),* 873 F.2d 1334, 1335 (9th Cir.1989). But that is far from saying that all decisions of the bankruptcy court are mooted simply because

> they touch on the bankruptcy proceeding or were adjudicated in it. Indeed, we have declared that even contentions about priority of claims on bankruptcy property are not mooted by dismissal. *Id.* And, perhaps more to the purpose, we have decided that "the allowance or disallowance of 'a claim in bankruptcy is binding and conclusive on all parties or their privies, and being in the nature of a final judgment, furnishes a basis for a plea of res judicata.'" *Siegel v. Fed. Home Loan Mortgage Corp.,* 143 F.3d 525, 529 (9th Cir.1998) (citation omitted); *see also Florida Peach Corp. v. Comm'r,* 90 T.C. 678, 684, 1988 WL 31439 (1988). Were we to affirm, the bankruptcy court's decision would have a res judicata effect that the Bevans would have to confront now that their estate has revested in them. *See Armel Laminates, Inc. v. Lomas & Nettleton Co. (In re Income Prop. Builders, Inc.),* 699 F.2d 963, 965 (9th Cir.1982). Thus, the case is not moot, and we retain jurisdiction over it.

*Id.*, 327 F.3d at 996–97. The Bankruptcy Appellate Panel of the Ninth Circuit (the "BAP") also has noted the continuing impact of a claims allowance or disallowance order, following the dismissal of a case. In *In re Latin*, 2009 WL 7751424 (B.A.P. 9th Cir. Feb. 11, 2009), a chapter 13 debtor objected to a claim filed by the California State Board of Equalization. *Latin*, 2009 WL 7751424 at *1. The court overruled the objection, and the debtor appealed. *Id.*, at *2-3. During the pendency of the appeal, the bankruptcy court dismissed the debtor's case for failure to make plan payments. *Id.*, at *3. In addressing whether the appeal was moot, the BAP explained:

> Our primary inquiry in all mootness questions is whether we can give the appellant any effective relief if we decide the matter on the merits in his favor. If we can grant relief, the matter is not moot. *Burrell,* 415 F.3d at 998.
>
> Here, the resolution of the merits could affect debtor's rights because "the allowance ... of 'a claim in bankruptcy is binding and conclusive on all parties or their privies, and being in the nature of a final judgment, furnishes a basis for a plea of res judicata.'" *Bevan*, 327 F.3d at 997. If we affirm, the bankruptcy court's decision would have a res judicata effect that debtor would have to confront since his estate has revested in him. Therefore, we can give debtor effective relief if we decide the matter on the merits in his favor.
>
> We conclude this appeal is not moot, and we retain jurisdiction over it.

*Id*. In a footnote, the BAP added: "Additionally, if debtor files another chapter 13, our failure to rule would preclude him from challenging any claim filed by the SBE based on Reg. § 1702.5 since the bankruptcy court's order would be final." *Id.*, at *4 n.9.

The facts in *Latin* are similar to the facts here. As in *Latin*, Debtor filed a chapter 13 petition and objected to a creditor's claim. The Court ruled on that objection and confirmed

Debtor's chapter 13 plan. The Court dismissed Debtor's prior case for failure to make plan payments. Debtor has filed a second chapter 13 case. As noted in *Bevan* and *Latin*, the Disallowance Order is to be afforded preclusive effect.

In light of these cases, the Court finds that the Disallowance Order is entitled to preclusive effect. Because the Disallowance Order was a decision on the merits, has not been vacated by statute and is no longer subject to appeal or reconsideration, the Disallowance Order stands as a final order. Debtor's receipt of a discharge does not impact the finality of the Court's decision to disallow Ms. Orsa's claim in the prior case. In fact, to hold otherwise would provide a windfall to a debtor who may lose on the merits of an objection to a creditor's claim, cause the dismissal of his or her bankruptcy case prior to confirmation or discharge and file a new case, hoping to relitigate allowance of the claim with new arguments. Allowing such relitigation of an issue previously decided on the merits would deplete judicial and party resources.

In the Second Case Opposition, Ms. Orsa questions the Ruling and again asserts that Debtor was a joint employer with N&D. At oral argument, counsel for Ms. Orsa stated that evidence against Debtor was presented before the Labor Commissioner. The Court stresses that, during the litigation regarding the First Case Objection, Ms. Orsa included *only* the Labor Decision as support for her theory that Debtor was a joint employer with N&D. As noted above, aside from mentioning that Ms. Orsa's claims against Debtor were stayed, the Labor Decision discusses N&D's liability alone. Ms. Orsa did not offer any other evidence in support of her theories.

As such, at the time the Court adjudicated the First Case Objection, by pointing out that the Labor Decision held only N&D liable to Ms. Orsa, Debtor "show[ed] facts tending to defeat the claim by probative force equal to that of the allegations of" Ms. Orsa's proof of claim. *Lundell v. Anchor Const. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000). The burden then shifted to Ms. Orsa to prove the validity of her claim. *Id*. In the First Case Opposition, Ms. Orsa did not provide evidence of Debtor's liability for the unpaid wages, interest and penalties. Ms. Orsa's only articulated legal theory was joint employer liability under *Martinez*. Consequently, the Court disallowed Ms. Orsa's claim.

In this case, Ms. Orsa reasserts that joint employer liability renders Debtor liable for N&D's debt to Ms. Orsa, and also includes new arguments under the Fair Labor Standards Act. Both Ms. Orsa's original *and* new theories are barred by the doctrine of res judicata because all of the arguments set forth by Ms. Orsa could have been asserted in response to the First Case Objection. *See, e.g. United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1151 (9th Cir. 2011) ("Importantly, in most res judicata cases, the inquiry about the 'same transactional nucleus of facts' *is the same inquiry as* whether the claim could have been brought in the previous action. If the harm arose at the same time, then there was no reason why the plaintiff could not have brought the claim in the first action. The plaintiff simply could have added a claim to the complaint.") (emphasis in original); *and Int'l Union of Operating Engineers-Employers Const. Indus. Pension, Welfare & Training Tr. Funds v. Karr*, 994 F.2d 1426, 1430-31 (9th Cir. 1993) ("[R]es judicata bars not only all claims that were actually litigated, but also all claims that 'could have been asserted' in the prior action."). In conclusion, the doctrine of res judicata precludes repetitive litigation regarding the allowance of Ms. Orsa's claim.

### III. CONCLUSION

The Court will sustain the Second Case Objection.

Date: February 7, 2019

Victoria S. Kaufman
United States Bankruptcy Judge